# U.S. EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| GENE A. TROTMAN, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:11-cv-2003 |
| | ) | |
| UNITED STATES AIR FORCE and | ) | |
| UNITED STATES ARMY, | ) | |
| | ) | |
| Defendants. | ) | |

---

**DECLARATION OF SYLVIA MITCHELL**

I, Sylvia Mitchell, declare that:

1. I am currently employed by the United States Army Corrections Command as a Correctional Program Specialist. My responsibilities are to support organizational goals, provide analysis and recommendations on military corrections policy and facilities, anticipate future needs, develop policy and guidance, and support implementation of American Correctional Association standards of accreditation. Additionally, I establish deadlines, conduct accurate and timely research of laws, directives, regulations, and other applicable references to respond to inquiries and other taskings from Department of the Army activities, members of Congress, and other federal and state agencies. I support future planning to meet long range initiatives in support of Army Corrections System (ACS) operations. I research, coordinate and lead meetings with other agencies at the HQDA level and sister Services for special projects assignments. Lastly, I act as the command FOIA and Privacy Act Official. I have been working in this capacity since August 2007.

1

**U.S. EXHIBIT 3**

2. The United States Army Corrections Command (ACC) exercises command and control and operational oversight for policy, programming, resourcing, and support of ACS facilities and elements worldwide. On October 2, 2007, the US Army Corrections Command (ACC) was established as a Field Operating Agency (FOA) under the Operational Control of the United States Army Provost Marshal General, Department of the Army. It is headquartered in Arlington, Virginia.

3. All information herein contained is based upon information furnished to me in my official capacity and upon my personal review and supervision of the searches conducted. Specific information relating to referenced records retention regulations was provided to me in my official capacity.

4. On February 14, 2012, the Army Litigation Division forwarded a copy of the complaint Mr. Trotman filed in the above captioned case, along with the subject FOIA request and requested that ACC, as the entity responsible for command and control of Army corrections facilities, search its files for responsive records.

5. Accordingly a records search was conducted for Mr. Trotman's records and the prisoner named "Coleman." Due to the facts that Mr. Trotman was incarcerated in 1973, and the ACC came into existence in 2007, ACC does not have prisoner rosters or individual Correctional Treatment Files (CTF) from the timeframe requested. Nonetheless, ACC did check our records for Mr. Trotman and the prisoner called "Coleman" with negative results.

6. I also checked old studies, evaluations, and analysis both electronic and hardcopy for responsive records. For example, I reviewed outdated historical information compact discs, and a hardcopy of a 2000 Army Corrections Study, for a diagram of the facility but came up with negative results.

2

7. I spent approximately 24 duty hours conducting this search using the following words

to search prisoner records "Gene A. Trotman," "Trotman," "Coleman," "Fort Meade Jail," "Fort

Meade Stockade," "Fort Meade Correctional Facility," "Fort Meade Confinement Facility," "Fort

Meade 1973," "Fort Meade 1974," "Fort Meade 1975," "Fort Meade 1976," "Fort Meade 1977,"

"Fort Meade 1978," "Fort Meade 1973-1983," "Fort Meade 1973-1993," "USA Confinement

Facilities 1973-1991." I searched for these terms using an automated system called Army

Corrections Information System (ACIS) and the Hummingbird filing system, which is a data

management system ACC uses to maintain prisoner and office files.

8. The Fort Meade Confinement Facility has been closed since 1991. Any CTF records

would have been transferred to the Records Holding Area and ultimately destroyed pursuant to

the records retention policies described below.

9.   Regarding relevant records destruction policies and procedures, Army Regulation

(AR) 340-18-17, "Maintenance and Disposition of Military Personnel Functional Files", dated

January 1970 and September 1974 (attached as Exhibit 1), stated that records such as those

requested by Mr. Trotman in number 2 of his FOIA request, concerning other individuals

confined in the facility at the time in question would have been destroyed between one and ten

years after the release of the individual from confinement. Additionally, AR 340-18-5,

"Maintenance and Disposition of Intelligence, Security, Military Police and Mapping Functional

Files" dated October 1970, with change effective Septemebr 1980, (attached as Exhibit 2)

paragraph 509-19, stated that prisoners or detained person receipt files or documents showing the

receipt of prisoners or detained person were to be destroyed after 3 years. Accordingly, any such

responsive records would have been destroyed long ago pursuant to the above described policies

and procedures.

3

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this _19_ day of _June_ 2012.

Sylvia Mitchell