# U.S. EXHIBIT 4

Case 3:11-cv-02003-WWE   Document 19-4   Filed 06/29/12   Page 1 of 7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| GENE A. TROTMAN, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 3:11-cv-2003<br>) |
| UNITED STATES AIR FORCE and<br>UNITED STATES ARMY, | )<br>)<br>) |
| Defendants. | ) |

## DECLARATION OF KEVIN PRATT

I, Kevin M. Pratt, pursuant to 28 U.S.C. § 1746, do hereby declare and state:

1. I serve as the Assistant Director for Military Personnel Records at the National Personnel Records Center (NPRC), with my office located in St. Louis, MO. The NPRC is administered by the National Archives and Records Administration (NARA), an independent agency in the executive branch of the federal government. I have been employed at the NPRC since September 2007 and in my current position since January 2012. Previously, between May 22, 1985 and July 31, 2006, I served as an officer in the United States Coast Guard.

2. During my last twelve years of service as an officer in the United States Coast Guard I managed staffs responsible for completing complex personnel actions involving pay, discipline, advancement and separation of Coast Guard members. As the Assistant Director for Military Personnel Records, my principal job responsibility is to manage several branches that input reference requests into the Case Management and Reporting System (the automated system used to process and track reference requests for military personnel and medical records), retrieve the

1

**U.S. EXHIBIT 4**

responsive records from storage, provide timely, accurate reference service to NPRC customers, and return the records to storage.

3. The statements made herein are based upon my knowledge of the holdings of NPRC, my knowledge of the procedures for processing requests relating to those records, and upon information and expertise accrued in the course of performing my official duties, including information obtained from my colleagues.

4. In addition to other types of facilities, NARA maintains 17 Federal Records Centers ("FRC") throughout the country, which function as government warehouses to store the temporary and permanent records that are legally owned and controlled by federal agencies. 44 U.S.C. § 3103 and 36 C.F.R. Parts 1253-54. NARA's Federal Records Centers store approximately 20 million cubic feet of agency records.

5. Each NARA FRC provides reference and other services to the federal agency that owns the records. With few exceptions, NARA only has physical custody of such records. The legal custody of the records remains with the agency that uses NARA's federal records center facility.

6. The NPRC is NARA's largest FRC. The NPRC houses and responds to requests on approximately 100 million records, is staffed by approximately 600 employees, and receives approximately 5,000 reference requests per day for information. The records housed by the NPRC come from both civilian and military departments of the federal government.

7. Records held at the NPRC are in several different mediums. A majority of the documents retired to NPRC by the military service departments are paper. However, some Official Military Personnel Files (OMPF) and Unit Morning Reports and Unit Rosters are stored on microfilm. In addition, the Department of the Army has given approval to NPRC to access electronic OMPFs through the Defense Personnel Records Information Retrieval System, which is a secure

2

electronic gateway that provides authorized government users access to a veterans' OMPF information from each of the Service-specific OMPF imaging systems. All of these records are indexed and searched using the veteran's name and social security number.

8.  NPRC uses an automated indexing system known as the "MPR Registry System" to locate most military personnel records. When military personnel and medical records are received by NPRC, a "registry number" is assigned to each record. "Registry numbers" are assigned sequentially upon receipt, and along with the former veteran's full name, service number or social security number, are entered into NPRC's "MPR Registry System." Any query of this system that uses the correct identifying information will provide to NPRC personnel the registry number and location of the record. Without the complete identifying information, locating the proper record from among the 100 million records in our holdings is extremely difficult, time consuming, and, in some cases, impossible. NPRC also uses the Beneficiary Identification and Records Locator Subsystem (BIRLS) to aid in identifying veterans. BIRLS is the Department of Veterans Affairs' (VA) automated index and locator system to all VA files. It contains an individual entry for each VA file showing the veteran's name, claim and /or insurance number, service number and varying amounts of military service information.

9.  Although certain personnel records may be in the actual physical custody of the NPRC, many are still in the legal custody of the military service from which they were obtained. The Service Departments therefore retain primary responsibility for responding to access requests for these records, and have provided guidance to the NPRC for responding to most Freedom of Information Act requests on their behalf. The Service Departments remain the FOIA appeal authority for their records.

3

10. OMPFs are permanent records under the Federal Records Act. They are accessioned into NARA's legal custody as archival records 62 years after the service member's separation from the military. This is a rolling date, which is calculated by subtracting 62 years from the current date; thus, for example, records dated before 1950 are presumed to be in NARA's legal custody as archival records and subject to NARA's access policies. Records dated after 1950 are non-archival and therefore are still under the legal control of, and subject to access restrictions as defined by, the Service Departments.

11. On February 14, 2012, the Army Litigation Division forwarded a referral from the Army Crime Records Center, along with Mr. Trotman's complaint, and the FOIA request that was the subject of this lawsuit, to the Deputy FOIA Officer, Office of General Counsel, National Archives and Records Administration. The Deputy FOIA Officer in turn referred the request to the NPRC. I assigned a member of my staff to process the FOIA request for NPRC.

12. The subject FOIA request sought: records related to Mr. Trotman; records indicating the name or other information of other prisoners housed in the same area from August 1, 1973 to October 15, 1973; records indicating the name or other information concerning service members or civilians who worked at the facility from August 1, 1973 to October 15, 1973; and maps or blueprints of the facility as it existed during that time.

13. The NPRC does not maintain maps or blueprints of confinement facilities. Accordingly, the NPRC could not respond to the item of the request relating to maps or blueprints of the facility.

14. Regarding the other items of the request relating to personnel records, as noted above, records are assigned registry numbers sequentially upon receipt and may be queried based on name and social security number of the individuals to whom they pertain. The Military Service

4

Departments created Morning Reports and Unit Rosters as part of their personnel and payroll functions. These records are indexed and searched by unit and reporting period. Members of the Organizational Records Section at the NPRC use paper finding aids to locate the responsive records on microfilm. NPRC uses these records to verify events or assignments that may not be documented in an individual's OMPF. Morning Reports detail each day's personnel changes. These reports are an "exception based" system, only containing information on those individuals who were not "present and accounted for." In order for us to conduct a Morning Report search, the requester must provide the complete name of the unit (to the smallest echelon; company, battalion, regiment, etc.) and desired month(s) to be searched. In our effort to identify the names and records of prisoners assigned to the Fort George G. Meade Disciplinary Barracks during the period August 1, 1973 through October 15, 1973, we consulted with the Air Force General Litigation Division to determine if the prisoners were assigned to a specific unit so a Morning Report search could be conducted. We were advised by the Air Force that the prisoners were not assigned to a unit within the Fort George G. Meade Disciplinary Barracks, but were left assigned to their original unit. Therefore, without any further information, it would require searching all personnel records in the NPRC to ascertain where a particular individual was confined at the Fort George G. Meade Disciplinary Barracks. Likewise, absent the social security number for the individual named "Coleman" referenced in the FOIA request, ascertaining whether an individual by that last name was incarcerated would require searching through thousands of records.

15. To facilitate our search of the MPR Registry for Mr. Trotman's military personnel records, the Air Force General Litigation Division provided his full name and social security number. The responsive record was identified in the MPR Registry and was provided to the Air

5

Force General Litigation Division. Additionally, the Army Litigation Division provided the Military Police (MP) unit that was responsible for running the Fort Meade facility in 1973 -- the 437th MP Company under 519th MP Battalion. From this information, the Organizational Records staff was able to use their finding aids to locate the microfilm containing the morning reports from that unit for the time period August 1, 1973 to October 15, 1973. My staff provided these reports to the Army Litigation Division.

16. The Organizational Records staff also searched for the roster of the 437th MP Company under the 519th MP for period August 1, 1973 to October 15, 1973. No responsive records were located. Additionally, there are no records available at the Civilian Personnel Records Center that are equivalent to the Morning Reports or Unit Rosters for civilian employees that were assigned to the confinement facility.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this **47th** day of **JUNE** 2012.

KEVIN PRATT

6